ÆOLIAN CO. v. HALLETT & DAVIS PIANO CO.

(Circuit Court, D. Massachusetts. February 14, 1905.)

No. 1,511.

1. PATENTS—SUIT FOR INFRINGEMENT—TITLE TO SUPPORT.

A bill of sale executed by a corporation, shown to have been at the time the owner of certain patents, conveying all of its stock in trade, assets, and property, specifically including "the patent properties which are held by the party of the first part," vested the purchaser with title to such patents, which will support a suit for their infringement, al-, though no patents were specifically described therein.

2. SAME—VALIDITY AND INFRINGEMENT—MOTOR FOR MECHANICAL MUSICAL INSTRUMENTS.

The Kelly patents, Nos. 356,690 and 357,933, both relating to motors, in which bellows are employed to rotate a shaft for use in mechanism for playing musical instruments, cover combinations of elements not anticipated in the prior art, and which, in view of the peculiar adaptability of the motor shown for feeding the music sheet over the tracker board in playing a musical instrument, or for other analogous uses requiring light, quick, and sensitive work, disclose patentable invention. Claims 1 and 3 of the first patent and 1 of the second *held* infringed by a motor having in principle the same mode of operation and used to operate a mechanical piano player, whether or not such player comes within the strict definition of a "musical instrument."

In Equity.

Dickerson, Brown & Raegener and Edward P. Payson, for complainant.

James Whittemore, for defendant.

HALE, District Judge. This bill in equity is for infringement of patents granted to George B. Kelly. The first patent is No. 356,690, dated January 25, 1887, for an improvement in mechanical musical instruments. The second patent is No. 357,933, dated July 15, 1887, for an improvement in motors for mechanical musical instruments.

At the threshold of the inquiry the defendant urges that the chain is not perfect by which the complainant derives his title to these patents. It appears in evidence that the original title to them was transferred by the patentee to the Mechanical Orguinette Company. In July, 1887, the Mechanical Orguinette Company executed and delivered to William B. Tremaine a bill of sale, conveying all of the stock in trade, assets, and property, specifically including "the patent properties which were held by the party of the first part, subject to payment of royalties, being conveyed subject to such royalties, which the party of the second part hereby assumes and agrees to pay." The schedule annexed includes patents which are inventoried at a certain specified amount. Immediately thereafter William B. Tremaine assigned an undivided two-thirds interest in and to the property described to James Morgan and John Nichol. On the same date the said Tremaine, Morgan, and Nichol conveyed to the Æolian Organ & Music Company. The last-named company is the complainant in this case, its name having been changed to the Æolian Company. The objection is made by the learned counsel for the defendant that the bill of sale from the Mechanical Orguinette

Company to Tremaine does not transfer the title to any patent by name, date, or number; that the schedule attached does not specify or set forth any patents; that no authority is shown in the president or treasurer to make the transfer. The other assignments are also objected to as insufficient to pass title to the patents in suit. The complainant, however, offers in evidence the fact that at a meeting of the trustees of the Mechanical Orguinette Company the president and treasurer were authorized to execute and deliver to Tremaine "a bill of sale sufficient in law to transfer to him the stock, property, and assets of the corporation." Pursuant to this authority, it appears that the bill of sale was executed, and that at the time the company was the owner of the patent in suit. We find that there appears the affirmative intention to convey absolutely all the patents, together with all the other property of the company. The bills of sale offered in evidence are, in our opinion, sufficient to show the intention of the parties to transfer the title to all patents, and to sufficiently identify the patents in suit as coming within the meaning and intention of the transfer. We think that both the legal and equitable titles to these patents were conveyed by the assignments offered in evidence.

The invention of both patents in suit relate to a motor in which bellows are employed to rotate a shaft. The use of the motor is in mechanism for playing musical instruments with the purpose of moving, over a tracker board, a perforated music sheet which determines the composition to be played. The elements of the motor are a wind-chest, a bellows with a communicating air passage, a crank shaft operated by the bellows, a chambered block or valve capable of movement over the air passages and always in communication with a passage leading to the wind-chest. The use of the chambered block or valve is to alternately put the motor bellows into communication with the wind-chest and with the outer air. The use of the motor is claimed by the complainant to be for a mechanical musical instrument or for analogous purposes. It is claimed that these motors "can only be used for performing work which does not require much power, and requires ready and quick response to changes in pressure." For such work the complainant says that it is desirable that such bellows motor shall be noiseless, durable, simple, light, compact; it is claimed, too, that its parts ought to be readily accessible; that it should be economical of power as well as simple in construction; and that there should be few devices connected with it which tend to increase the pressure of moving parts, or which tend to loss of power. In order that a motor should have all the above desired elements of a light motor for use in musical instruments and for other analogous purposes, it is urged by complainant that it should be operated by vacuum or exhaust bellows rather than by pressure bellows.

In the first patent in suit, No. 356,690, the inventor begins his specification by stating that "the object of the present invention is to provide means in a mechanical musical instrument for feeding the perforated music sheet, used in such instruments, through the instrument for the operation of the sounding devices, the winding of the music sheet upon the take-up roll, and the rewinding of the music sheet upon the

music roll." Claims 1 and 3 are brought in issue in this suit. They are as follows:

"(1) The combination, with a main wind-chest of a musical instrument, a bellows, and a shaft adapted to revolve in suitable bearings and connected to said bellows for operation of said shaft, of a chambered block having communication by its chamber with an air passage leading to said wind-chest and arranged to move back and forth over an air passage leading to said bellows, and thereby make and break communication between its chamber and the air passage to said bellows, said block being connected to said shaft for operation of said block.

"(3) The combination, with a main wind-chest of a musical instrument, one or more bellows, and a chambered block to each bellows, having communication by its chamber with an air passage leading to said wind-chest and arranged to move back and forth over an air passage leading to its bellows, and thereby make and break communication between its chamber and the air passage leading to its bellows, of a shaft adapted to revolve in suitable bearings and connected to each bellows for operation of said shaft, and by belt or gear connected to a music or take-up roll for winding the perforated music sheet thereon."

It will be seen that these claims relate only to a motor for rotating the shaft for drawing the perforated music sheet over the tracker board. The patent, as shown by these claims, is a combination patent. The elements of this combination are the main wind-chest, the bellows, the shaft, the chambered block or valve communicating by its chamber with an air passage leading to a wind-chest and arranged to move back and forth over another air passage .leading to the bellows, thereby making and breaking communication between its chamber and the air passage to the bellows, the chambered block or valve being in communication with the shaft.

Claim 3 presents no vital elements in addition to those of claim 1. It merely shows the fact that one or more bellows may be used, and that the device is connected to a music roll for winding the perforated music sheet which causes the playing.

The instrument, as exhibited in the models and in the drawings, shows a wind-chest formed of two side boards set at an angle to each other, and united by two parallel end pieces, making a chamber in which pneumatics for operating the reed valves are located. At each end of the wind-chest are two pairs of upright bellows secured to the wind-chest by fixed boards; there are other boards adapted to swing on their hinges to and from the fixed boards. The fixed boards and the swinging boards are united by flexible material all around their edges. The two moving boards of each pair of bellows are connected at their upper end by a connecting rod or pitman. The arrangement and construction are such that when the movable board of one bellows is moved inwards the movable board of the other will be moved outwards, and so alternately. Each bellows on one side of the wind-chest is connected by a separate connecting rod or pitman pivoted at one end to a separate arm of a shaft, the two crank arms being set on the shaft 90 degrees apart. On this shaft is a gear wheel. This meshes with a larger wheel on the take-up roll, which propels the perforated music sheet. To secure the alternate expansion and collapse of the bellows, a passage leads from each bellows into each end piece, and then extends at a right angle to the outside of such end piece and in the same horizontal plane. Passages extend inward from the outside of each end piece in the same

horizontal plane, and between each of the two passages which we have just described. The last-named passages connect with a passage open at the lower end of the end piece into another passage communicating with the main wind-chest chamber. The passage leading from each bellows to the end piece and the passage extending inward from the outside of each end piece between the other passages are controlled by a chambered block or valve on the outside of each end piece, the said block or valve being attached to a pivoted bar, on which it can freely swing back and forth across and over the open ends of the passages above described. The patentee states in his specification that the chamber of this block or valve is of a length greater than the length of the openings at the end of the passages we have above described. The block or valve is also of a width to extend over and cover at the same time either one of said outer openings and the middle opening, so that, as the valve is swung back and forth across the openings, its chamber will be over each one of the two outer openings alternately, and at all times over the middle opening; so that air can pass into the middle opening alternately from each of the outer openings through the chamber into the several passages and into the main wind-chest, by which means, as the chambered block swings back and forth, the bellows of each pair are alternately exhausted; and while the air is being exhausted from one bellows of a pair into the wind-chest, atmospheric air can pass through the other passage, which is now open to the atmosphere, into the other bellows of its pair; and so on alternately. As it is necessary that the chambered block shall be moved back and forth over the openings at regular intervals, the patentee provides the following means for producing this movement, namely: The shaft above referred to, upon which the gear wheel is located which meshes with the larger wheel on the take-up roll, is provided at each end with an eccentric adapted to revolve in a socket in a block which is mounted to slide in its movements back and forth over the end of a rod, which rod is bent at right angles at the inner end; the right angular portion of this rod is adapted to turn in bearings on the upper edge of the wind-chest between each pair of bellows; this rod is bent downward along the outer surface of the end pieces, and its lower end engages the corresponding chambered block or valve. When this shaft is rotated, an axial rocking movement back and forth is imparted to said rod by means of said eccentric and said block; and this causes the part of the rod which extends downward to swing back and forth, causing the chambered block or valve to have a corresponding movement, for the purpose of alternately permitting atmospheric air to pass into the two bellows of a pair, and to exhaust the air from that bellows into which, at the time, atmospheric air is not passing. As two pairs of bellows are provided, one pair at each end of the shaft, and connected to said shaft as above described, the alternate expanding and collapsing of each pair causes a uniform rotating movement of the main shaft. This movement is transmitted to the music roll and to the take-up roll for the purpose of winding and rewinding the music sheet.

The complainant points out that the patentee throughout the specification often refers to the bellows as an exhaust bellows, and he claims that the patentee had in mind only an exhaust bellows, that he

must have had in mind the construction of a motor adapted to be operated by exhaust or vacuum, and that he did not have in mind a use of the motor with air under pressure. The complainant further claims that the statement of the patentee that the motor "can be operated with any suitable operating bellows" refers to any bellows suitable within the general description of the specification, and that this description cannot refer to anything except an exhaust bellows. The position of the complainant is, in short, that the main bellows is an exhaust bellows, and the main wind-chest is an exhaust wind-chest, and that the claim calls for a motor adapted to be operated by vacuum and not by compressed air.

In the second patent, No. 357,933, the motor appears by the model and drawings to be constructed with two upright bellows, having their movable boards connected by a rod. A connecting rod or pitman pivoted to the bellows board has its other end connected to a crank arm of a shaft secured in bearings upon a block. This shaft is rotated by the expansion and contraction of the bellows. The block has chambers, one communicating with one bellows, and the other with the other bellows. This block is also provided with a horizontal passage located between the said chambers open at its outer end and communicating at its inner end with the wind-chest. Each chamber has two openings forming communication between said chamber and the outer air. In order to establish communication alternately between the wind-chest and the outer air a chambered block or valve is provided, guided in ways; the block or valve is connected by a rod to the connecting rod above. When the two bellows are operated, the connecting rod or pitman swings on its pivot, and through the rod the valve is moved up and down in its guideways. The valve operates in respect to its openings upon the same principle which characterizes the operation of the valve in the first patent. The operation of the valve in this patent is in guideways and in an up and down movement. The complainant claims that the specification shows that the bellows are operated by exhaust and not by pressure. Claim 1 of this patent, which is the only claim involved, is as follows:

"(1) The combination, with a wind-chest and one or more bellows and a revolving shaft, of a chambered block arranged to move back and forth and make and break air communication between said wind-chest and each bellows and connected to the pitman connecting one of said bellows to said shaft for the operation of said block."

The learned counsel for the complainant, in describing the operation of the valve in this patent, says:

"The manner of mounting the chambered block or valve indicates that the motor is to be operated by suction. The chambered block or valve is mounted to reciprocate in a rectilinear path. All of the valve actuating parts are movable, and it is evident that a rectilinear reciprocating movement can be secured only through some fixed element, and that element in this case consists of the guides. That being the sole function of the guides, they are so constructed that they do not assist in holding the valve upon its seat; in fact, the guides are merely plain side pieces without grooves, and they are of such form as to permit the valve to be lifted from its seat. As constructed, if the motor was one to be operated by pressure the valve would be lifted from its seat, and hence the motor would be inoperative. When operated by suction, no retaining means are necessary for the valve, and the

absence of any retaining means is clear evidence of the intent to operate by suction."

We have entered into some detail in the description of the devices of the two patents, in order that we may show substantially what these devices are, without introducing drawings.

The learned counsel for the defendant presents the defense to this suit that both the patents brought in issue are invalid by reason of anticipation. Certain patents for mechanical musical instruments are brought to the attention of the court. Some of these patents present close and serious questions of anticipation. The Pain patent has required careful consideration in this regard. It has three bellows; the movable board of each bellows is connected by a connecting rod to a crank shaft; each bellows has a port opening into a passage, which passage is controlled by two poppet valves, one valve controlling communication with the atmosphere, and one valve controlling communication with the wind-chest. These two valves are connected by a rod, so that when one is open the other is closed. The crank shaft has cams which operate on levers for the purpose of raising the rod carrying the two valves. This patent has the wind-chest, the bellows, and the shaft, which represent the same elements in the patents in suit. But the chambered block or valve of the patents in suit, in our opinion, is not, in principle, embodied in the two poppet valves of the Pain patent. In these patents the valve is outside of the motor and rests freely upon its seat; at all times it extends over the passage leading directly to the suction chamber; it is held upon its seat by the pressure of air. This valve is especially adapted to the combination in which it is found, for use in the light, sensitive work of a motor adapted to musical instruments and for other analogous uses. The invention of those patents consist in the combination of the wind-chest, the bellows, the shaft, and the chambered block or valve. This valve we have fully described and considered in reference to its uses for light work such as is required in musical instruments. We think that this combination is not anticipated by a combination of a wind-chest, a bellows, a shaft, and two poppet valves, such as exist in the Pain patent. Taking this combination of a wind-chest, bellows, shaft, and the poppet valves, we think it required the inventive faculty to supplant the two poppet valves by one simple, light valve, working by suction, and especially suitable for ready and quick response in the light motors to be used in musical instruments and for other analogous uses. In the patent for the Parker motor, we also find two valves required to do the work of the single motor of the patent in suit. The Stone patent presents four valves, with levers, springs, and cams to control their movements. In both the Parker and Stone patents a more or less complicated system is presented, requiring the tension of springs and producing the friction of levers and cams which must be overcome with the loss of some power. In the case of the Stanley patent we find three or four bellows arranged around a common block, through which a shaft passes longitudinally. This shaft is provided with a crank, by means of which the shaft is rotated by the bellows as they expand and collapse alternately. Belt pulleys are provided on this crank shaft, and by suitable bellows the music rolls are rotated. For each bellows a duct is provided in the

block, on which the bellows are secured. Each duct is connected with one bellows, and extends from end to end of the block. On each end of the block a rotary valve is provided, the valve at one end serving for the purpose of successively connecting the several bellows with the air, and the valve at the other end being provided for successively connecting the several bellows with a suction chamber. This suction valve is contained in a valve chest, and is acted upon by a spring which presses it upon its seat. This spring is required, because, without its use, the loss of air would be so great that the motor would not operate. In our opinion, these two patents come the nearest to anticipation of any cited in the prior art; but they do not present a chambered block or valve which is identical with, or takes the place of, the valve of the patents in suit. The valve of these patents is mounted to move back and forth over the air passage leading to the bellows which is always in communication with the passage to the wind-chest. It works simply, lightly, and effectively; it is peculiarly adapted to the kind of motor in which it is used. In our opinion, it required a use of the inventive faculty to put this single valve in the place of the two or more valves presented in the patents to which we have called attention, and in place of the different valves of all the other patents cited in the prior art relating to musical instruments. We do not think it necessary to refer in detail to the other patents cited and claimed to be anticipatory in this art. None of them relate to motors for mechanical musical instruments having in combination a wind-chest, a bellows, a shaft, a single chambered block or valve, an air passage between the wind-chest and the chambered block, and an air passage leading to the bellows, the chambered block being mounted to move back and forth over the air passage leading to the bellows, but always in communication with the passage to the wind-chest. We do not think that any one of the motors presented in the prior art could be reconstructed so as to embody this combination without such a change as to entirely destroy its identity.

Certain patents are cited and brought to our attention relating to motors in use in steam engines, gas meters, and in other engines intended for heavy work. It is insisted with great emphasis and learning by the learned counsel for the defendant that these patents should properly be considered in the prior art, both under the general principles of patent law, and also because by the terms of one of the patents in suit the mechanism of that patent "can be applied to other uses and purposes as well as to a mechanical musical instrument," and it is urged that these words in the specification of the first patent must have their full and unreserved meaning. We think, however, that the language of the specification must be construed to mean that the motor may be used for other analogous purposes and for purposes for which it is especially adapted. In our opinion, the inventive thought of the patentee was to make a combination for a light class of motors, adapted for feeding by mechanism the perforated music sheet, for playing musical instruments; the combination may be used for motors adapted for other light, quick, and sensitive work. We think it required the inventive faculty to transfer the devices found in the heavy locomotives, steam engines and gas meters and make them applicable to adaptation for musical and other similar purposes; and so we do not think it neces-

sary to discuss in detail the group of patents which are brought before us in the art relating to locomotives, steam engines, gas meters, and other such devices.

We find nothing in the prior art to induce us to believe that the motor of the patents in suit could have been devised without the exercise of the inventive faculty. This motor is simple in operation and in construction. It is peculiarly adapted for feeding the music sheet over a tracker board in playing a musical instrument. It may be used for other light analogous purposes. We think it was invention to take any of the devices such as are exhibited to us in the prior art and make the vital change in them which produced the machine before us. While, after the fact, it may be urged that the changes which produced the whole combination of the patent in suit were obvious, in view of the prior art, and might have occurred to any skilled mechanic, still it must be admitted that those changes never were made by any one until made by the patentee of these patents. The evidence does not show that any such success has been achieved by this patent as was achieved by the great primary patents in the world of invention, but it does tend to show that the patentee took the last step which counted, and which made a successful machine.

Has the defendant infringed the patents in suit? The motor of the defendant, which is alleged to be the offending structure, has three bellows, each having a movable board connected by a connecting rod with a crank shaft. This shaft, by means of a sprocket wheel and chain, serves to rotate either the music roll or the take-up roll; the bellows are secured on a board which has a passage leading to the interior of the bellows and also has a passage leading to the wind-chest; the wind-chest has a crank connected with a suction bellows; for each bellows a chambered block or valve is mounted to slide up and down on the face of the board, the chamber of the block being at all times and in all positions in communication with the suction chamber by means of the passage. Each valve is connected by a pivoted rod with a connecting rod of its corresponding bellows. As long as the chambered block corresponding to any one bellows establishes communication between the passages, the air will be exhausted from the bellows; and as long as the passage of any one bellows is uncovered by its corresponding chambered block, atmospheric air will pass through said passage into the corresponding bellows to expand it. The three bellows are thus successively collapsed and expanded, and so uniform rotation of the shaft is secured.

In a motor made subsequently by the defendant it appears that there is no material change from the above-described motor. In this motor the reciprocating chambered block is connected directly to the crank shaft instead of attaching the connecting rod to the pitman. In both motors of the defendant the movement of the valve is effected in the same way.

It is urged by the learned counsel for the defendant that the first patent in suit is distinctly and solely for a mechanical musical instrument, and that the motor is claimed to be connected to "a main wind-chest of a musical instrument"; and it is urged that the defendant uses its motor only in a piano player, a separate instrument which has no

speaking devices, and which is intended to play a piano; that the piano is one instrument; that the piano player is another instrument; but that the mechanical piano player is never a "musical instrument," any more than a performer playing a piano by hand is a musical instrument. But in our opinion the use of the motor upon a piano player is clearly an analogous use and within the inventive thought of the inventor. In fact, there is much reason for holding that the mechanical piano player is itself a "musical instrument." A well-recognized definition of the word "musical" is "of or pertaining to music or the performance of music." The device of the defendant, namely, the mechanical piano player, clearly pertains to "music or the performance of music"; it seems to us to be within the definition of a "musical" instrument. While we do not think the inventive thought of the inventor can be extended to a steam engine, we think it must be capable of extension to a motor so closely and intimately connected with a musical instrument, if it is not indeed itself a musical instrument. The machines of the defendant submitted to us seem in principle to have the same mode of operation and to accomplish the same results as the motors of the patents in suit. We cannot escape the conclusion that they infringe.

After a careful study of these patents and of the prior art, and of all the questions raised in reference to the infringement, we are satisfied that the complainant has shown that the patents in suit are valid, and that they have been infringed by the defendant.

The decree must be for the complainant for an injunction and for an accounting.