## CONNECTICUT TELEPHONE & ELECTRIC CO. v. BROWN & CAINE, Inc.

(District Court, N. D. Illinois, E. D. January 25, 1926.)

No. 4750.

1. Equity ⊙=65(2)—Plaintiff, in patent infringement suit, held not to have come with unclean hands, due to representation of prior adjudication.

In patent infringement suit, plaintiff *held* not chargeable with having come into equity with unclean hands, because it procured order to show cause why preliminary injunction should not issue on representation of prior adjudication, when in fact prior litigation resulted in entry of consent decrees only, where true facts were timely brought to court's attention.

2. Equity ⊙=65(2)—Plaintiff, in patent infringement suit, held not to have come with unclean hands, due to alleged erroneous representation concerning extent of business.

Plaintiff, in patent infringement suit, *held* not to have come with unclean hands, because

its sworn bill of complaint contained alleged erroneous statements concerning extent and character of its business in patented article; such matter not being material.

3. Patents ⊙=255—Patentee, by advertising replacement of worn parts by replacement of assembly unit, held not to have licensed public to make such unit.

Patentee of electric ignition device, by advertising the ease with which contact points could be replaced by removing and replacing complete breaker plate assembly, *held* not to have invited or licensed public, without consideration, to make such breaker plate assembly unit.

4. Equity ⊙=24—Forfeitures not favored in equity, and enforced only where necessary to sustain rights of another.

Forfeitures are not looked on with favor in equity, and will be enforced only in clear cases, where necessary to sustain rights of another.

5. Patents ⊙=283(1)—Language of patentee's advertising construed to vitalize, and not to paralyze, invention.

Where patentee has made an admitted advance and contribution to the art involved, language of his advertising should be construed to vitalize, and not to paralyze, the invention.

6. Patents ⊙=255—Difficulty in making repair, arising from patentee's form of manufacture, does not entitle user to make replacement, if repair is possible.

That patentee's form of manufacture makes it difficult, costly, or inconvenient for user to make a repair, easily accomplished by replacing an assembly unit, does not give user right to make the replacement, so long as he is not prevented from making the repair.

7. Patents ⊙=255—Patentee, by advertising replacement of assembly unit, held not to have fixed its legal status as a repair part, when in fact it was replacement.

Patentee of electric ignition device, by advertising that worn contact points could be repaired by removing and replacing complete breaker plate assembly unit, *held* not to have legally fixed the status of that unit as a repair part, when in fact it was a replacement.

8. Patents ⊙=255—Patentee may make and user may repair patented device as desired, but user cannot replace elements not worn out.

Patentee has right to make device as he sees fit, and user the right to replace a worn-out element with a new, in any way he chooses, except that he must not replace elements of the device that are not worn out.

9. Patents ⊙=328.

Wilcox & Lawton patent, No. 1,113,850, claim 6, for double leaf spring to co-operate with breaker arm of igniting device, *held* valid and infringed.

10. Patents ⊙=328.

Wilcox & Cavanagh patent, No. 1,204,104, claims 1, 2, 3, 4, 6, 7, 8, 9, and 11, for breaker

assembly replacement unit in igniting device, *held* valid and infringed.

### 11. Patents ☞328.

Johnson patent, No. 1,266,811, claims 1 and 3, for skeletonized formation of breaker arm of igniting device, *held* valid and infringed.

### 12. Patents ☞328—1,221,239, claims 1, 2, and 3, for slip terminal plug for electrical connection, valid and infringed.

Stahl and Cavanagh patent, No. 1,221,239, claims 1, 2, and 3, for slip terminal plug affording electrical connection for igniting device, *held* valid and infringed.

In Equity. Patent infringement suit by the Connecticut Telephone & Electric Company against Brown & Caine, Inc. Decree for plaintiff.

Banning & Banning and Samuel W. Banning, all of Chicago, Ill., and George H. Mitchell, of New York City, for plaintiff.

Brown, Boettcher & Dienner, of Chicago, Ill., for defendant.

CARPENTER, District Judge. This suit involves Wilcox & Lawton United States patent No. 1,113,850; claim 6 being in dispute. The claim is directed particularly to the double leaf spring which co-operates with the breaker arm of the igniting device described. It involves Wilcox & Cavanagh United States patent No. 1,204,104; claims 1, 2, 3, 4, 6, 7, 8, 9, and 11 being in dispute. These claims are directed particularly to the breaker assembly replacement unit, which carries the parts in permanently assembled arrangement, and constitutes a unit of reconstruction, replaceable when the contact points become worn or burned out. Plaintiff, in addition, relies upon Johnson United States patent No. 1,266,811, claims 1 and 3 of which are directed to the special or peculiar skeletonized formation of the breaker arm; and Stahl and Cavanagh United States patent No. 1,221,239, claims 1, 2, and 3 of which are directed to the slip terminal plug, affording an electrical connection for the igniter.

The plaintiff is engaged in the sale of automobile ignition systems, which embody and contain the features defined and claimed in the patents in suit. The entire device is designed to control the operation of the electrical contact points. It is essential that when closed the points shall be in perfect contact, and that when separated there shall be a perfect separation. If the points become worn or pitted by burning, due to electrical causes, so that the area of contact is reduced, the device will operate imperfectly, and, if the impairment is considerable, the contact points must be renewed.

The issue in this case centers upon the right of the purchaser of a Connecticut ignition system to recondition the apparatus by a renewal of the points. It is physically and mechanically possible to introduce new points into a Connecticut igniter in any one of three different ways, and the defendant asserts that it is within its legal rights in choosing the method whereby the Connecticut breaker mechanism may be reconditioned, namely:

(1) By supplying the contact points separately, to be fitted into place in a genuine Connecticut breaker assembly.

(2) By furnishing movable contact points, already mounted or secured to a breaker arm.

(3) The substitution of the complete breaker assembly, including the base plate, pivot stud, breaker arm, double leaf spring, movable and fixed contact, terminal connections, cam roller, and lever pin, which engages the lever in the housing.

The right to make this entire substitution of parts is insisted upon by the defendant. Here is the crux of this lawsuit. The Connecticut ignition system of plaintiff involves what is well known in the art as an igniter—a timer mechanism alternately to close and open a battery circuit by the meeting and spreading apart of contact points. It is an instrument of precision, requiring perfect functioning of parts, especially the contact points.

The plaintiff's patents relate especially to a slip terminal plug, a two-leaf spring, a form of movable breaker arm, and what is herein designated as a breaker arm assembly. The main contention here is upon the breaker arm assembly, as a removable unit, and whether a sale of such a unit constitutes legitimate repair for a damaged or worn-out part of the igniter, or is replacement.

This removable breaker assembly unit is mounted upon a plate, and comprises a fixed and a movable contact point, a two-leaf spring, a slip terminal plug, a special form of movable breaker arm; the movable contact point being mounted on the end of the breaker arm. With the exception of the spring and the contact points (which latter frequently become damaged and require renewal), the life of the several elements mentioned would ordinarily extend throughout the life of the device as a whole.

The plaintiff admits that any one may remove the breaker assembly unit, remove the

damaged contact points, or a broken spring, substitute new ones, and replace the repaired assembly unit; that this is mechanically possible, and requires but a few minutes. The plaintiff, however, for reasons of its own, which the defendant charges to be mala fides, has riveted or otherwise so fastened the several parts of the assembled unit that it is in fact difficult to make the substitution of a new or damaged part, without endangering the nicety of adjustment, and without considerable expense. The result is that users generally remove the assembly unit, purchase a new one complete from plaintiff, and install it in the igniter, instead of repairing the old and removed unit. The defendant makes and sells a complete breaker plate assembly as a unit, for use in the Connecticut igniter; also several of the separate elements, such as the breaker arm, the double leaf spring, the slip terminal plug, and a substitute stud bearing.

It is urged by the defendant that the plaintiff, having no claim to the individual elements, and no claim to the breaker assembly, but only to the assembly as a subcombination of certain of his patented claims, therefore the defendant has a right, not only to make and sell the separate items above noted, but also the assembly unit as a whole, for and as legitimate repairs to a Connecticut igniter. The defendant insists that plaintiff is estopped in equity from maintaining this action (a) because plaintiff does not come into equity with clean hands; and (b) because in certain literature to the trade, to induce sales, plaintiff has instructed the public how to do the very thing here complained of, has invited the public to make the repairs, and has, in effect, licensed the doing of the acts complained of; and particularly so because plaintiff has given no notice of any patent monopoly in so doing, nor made any assertion or reservation of any exclusive rights in this regard.

The real legal question raised is this: Does a patentee, by making statements in his patent and trade literature concerning the ease with which, and a method by which, the patented device sold may be repaired upon the wearing out of one of its parts, and without reserving the sole right to make the repair by that specific method, and by using certain mechanical arrangements which make it difficult, although not impossible, for the user to substitute a new part for the part worn out, grant an implied license to the public to use his particular method of reconditioning the patented device, and is plaintiff thereby estopped from maintaining a suit to restrain an infringement of that character? There seems to be no precedent on this precise question, and the answer must be reached by application of general principles to specific facts.

[1, 2] The charge that plaintiff does not come into equity with clean hands, and therefore is estopped from seeking redress in equity, is based upon the allegations by defendant that an order to show cause why a preliminary injunction should not be granted was secured upon a representation of prior adjudication of the patents in suit, when in fact the prior litigations had resulted in the entry of consent decrees only; and that in the sworn bill of complaint plaintiff made alleged erroneous statements concerning the extent and character of plaintiff's business in the patented article. There is no allegation that plaintiff has made any improper use of the consent decree in the trade to influence the public or the trade as to the validity of its patents, but only that its true, but perhaps misleading, statements were used in this litigation as an apparent basis for the show cause order and the injunction prayed for.

No rights of the defendant are asserted to have been violated, or any of its legal defenses impaired. The true state of facts, however, was called to the attention of the court with sufficient promptness to prevent any inadvertent or summary action by the court. On a motion for an order to show cause, the fact of prior adjudications, whether on the merits or by consent decree, is not necessarily controlling. As a matter of fact, the character of the prior decrees was disclosed to the court by plaintiff's counsel, and such admission absolved plaintiff of any charge of coming into equity with unclean hands.

The statements with respect to the extent and character of plaintiff's business, in plaintiff's sworn bill, asserted by the defendant to be shown to be erroneous, are the usual general allegations of bills of this character. The extent of plaintiff's business at the time of filing the bill is not material to the issues involved; the fact that its once large business is shown to have been curtailed is no more relevant than the fact that plaintiff has no business at the present time. The issue is not whether the plaintiff is engaged in manufacturing the patented devices, but whether or not the defendant has violated plaintiff's exclusive rights.

[3] The second ground upon which estoppel

is urged by defendant rests upon statements in plaintiff's patent, and upon illustrated statements in plaintiff's catalogues, of a method of removing and replacing of the complete breaker plate assembly. After describing the method illustrated, plaintiff stated: "And the whole breaker mechanism can be removed from the housing. A new breaker plate can be substituted for it, simply by reversing the above operation, without in any way affecting the timing of the ignition." Again, plaintiff stated: "As the contact points on this system are the *only parts which will need renewal,* we have devised a plan of replacement which is so simple that any one can make it by following these instructions. * * * The renewal of contact points can be easily and quickly made at a very slight expense *by installing* a new breaker plate."

This language is construed by defendant to be not only an inducement to buy a Connecticut ignition system from the plaintiff, because of the ease with which a breaker plate assembly containing the worn-out contact points may be removed, and the ease with which a new breaker plate assembly containing new contact points may be inserted in the housing, but also as an invitation and inducement to the public to purchase a new assembly from any one. This interpretation is urged, also, upon the fact that nothing is said by the plaintiff about buying the new assembly plate *only* from the plaintiff; that is to say, by plaintiff's silence as to any reservation of right to substitute a complete new assembly plate for the removed one which, out of its various elements, has only the contact points worn out or damaged, as well as by the fact that plaintiff so makes its assembly that it is easier to insert a new one in the housing than to replace the worn points with new points, the plaintiff has estopped itself.

This interpretation by the defendant of plaintiff's acts and assertions, while ingenious, is technical, and does not ring true. The defendant's interpretation is, moreover, not the only interpretation possible. It is to be noted that this language purports to be "a plan of replacement," but not the only plan. It is recommended as better than the existing and usual method of merely removing from an ignition device so much thereof as may be worn out and requires renewal. Moreover, it is in evidence that the latter plan may be used also on plaintiff's igniter, and that it requires but a few minutes to remove the contact points and insert a new one on the breaker arm of the removed breaker plate assembly.

[4] Defendant's interpretation would involve a voluntary admission against interest by plaintiff, a voluntary forfeiture to the public of a part of plaintiff's patented invention. Forfeitures are not looked upon with favor in equity, and are enforced only in clear cases, and where the sustaining of the rights of another can only be accomplished through such forfeiture. I cannot agree with the defendant that by the use of the language quoted the plaintiff intended to and did *invite* the public to make its invention, or to license the public without any consideration to make this breaker assembly unit.

[5] Where a patentee has made an admitted advance and contribution to the art, language such as is here relied upon by the defendant should be so construed as to vitalize, and not paralyze, the invention. The strained construction urged by the defendant does not seem to justify the application of the harsh rule of estoppel against plaintiff.

[6] It is further urged by defendant that, while the plaintiff admits that the public has the undeniable right to make a repair and to replace a minor worn-out element like the contact points, by first taking the breaker assembly unit out of the housing and then returning it with a new contact point thereon, the user cannot exercise this legal right, because the plaintiff has so manufactured its removable assembly, by riveting and otherwise, as to make the mere substitution of new for worn-out contacts difficult, inconvenient, and too expensive. This may be true, but plaintiff's method of manufacture *does not prevent* the user from making the repairs that he has a right to make. It does not compel the user to make or to purchase an entirely new assembly plate. It does not compel him to purchase a new assembly unit from the plaintiff. It does not take any right away from a user to make repairs to maintain the use of the igniter he has purchased.

In addition to this, the defendant is not a user. He is a competitor. Clearly it cannot be assumed that, by the bargain of sale between the plaintiff and a user, the plaintiff intended to cut himself off and to benefit a competitor by merely informing the public of one of the advantages of his device. Moreover, it would seem that by the application of the maxim, "He that seeks equity must do equity," the defendant is not in as strong a position as he might be in urging

the application of the harsh doctrine of estoppel against the plaintiff. The evidence shows that defendant not only supplies contact points—long-established *repair parts*—but goes beyond and sells a complete breaker assembly unit, not necessary to the exercise of its right to make and sell repairs.

Moreover, the defendant makes and sells the devices charged to be infringements, as repairs, *not* for the trade in general, but specially as "replacement parts to fit Connecticut igniters." Defendant advertises "replacement," not "repair," parts. In addition to the breaker assembly unit, defendant makes a special form of movable breaker arm, which is patented to plaintiff, and a special form of slip terminal plug, and a two-leaf spring, which was also covered by plaintiff's patents. That the furnishing of defendant's assembly unit is not a repair, as a unit, but, notwithstanding the fact that it includes a repair contact point or points, is a replacement of uninjured parts of plaintiff's device, seems to admit of no doubt. Such a rebuilding of plaintiff's patented structure under the guise of repairing a worn-out part is not authorized under the authoritative and numerous decisions not necessary here to review.

To make an exception in favor of the defendant may only be done by giving effect to the unnatural interpretation of plaintiff's language and acts urged by the defendant. It would be the establishment of a dangerous precedent in this and no doubt many other cases to permit a defendant by replacing parts and elements which do not wear out, thus to appropriate the substance of plaintiff's invention under the assertion of a right to replace a minor part or element thereof.

[7] I cannot agree to the proposition advanced by the defendant which in effect is that the plaintiff, by stating in his patent and his trade literature, as a novel feature and advantage of his invention, provision of a removable assembly unit to effect a reconditioning of his igniter and manufactures his device accordingly, thereby fixed the legal status of that unit as a repair part, and invited and authorized others to make and supply it as a repair, when in fact it is a replacement. The plaintiff should not be penalized for making a construction wherein a *major* substitution is *desirable,* though a *lesser* substitution is sufficient.

[8] A patentee undoubtedly has the right to make his device as he sees fit. A user has the undoubted right to replace a worn-out element with a new element, and in effecting such a repair the user may do it in any way he chooses, with this restriction: He must not replace other elements of the patented device that are not worn out. That patentee's form of manufacture makes it difficult, or costly, or inconvenient for the user to make the repair, does not give the user any license to make the replacement, so long as he is not prevented from making the repair. The evidence here shows that the repair of worn-out points can be made.

[9-12] In conclusion, then, in view of what has just been stated, and upon the finding here made that the patents are valid, and that the defendant's parts, Nos. 2245, 2700, 2701, 2725, and 2726 are, as insisted by plaintiff, infringements of the patent claims in suit, the equities are with the plaintiff.

A decree may be prepared accordingly.