## The Pietro G.

*(District Court, S. D. New York.  June 29, 1889.)*

**1. Shipping—Bill of Lading—Demurrage.**

Upon a bill of lading issued by a chartered vessel, making the goods deliverable to order, the bill of lading itself is the only contract between the ship and a *bona fide* purchaser and indorsee, who accepts the goods under the bill of lading, without knowledge or notice of the charter; and if he detains the ship in receiving the goods, and the bill of lading specifies no rate of demurrage, nor refers to the charter, the ship can recover only according to the value of her use, and not an amount in excess thereof specified in the charter, though the charterer was the shipper of the goods.

**2. Same—Charter.**

The charterer of the bark P. G. loaded her partly with his own goods, and took from the master a bill of lading, deliverable to order, making no mention of the rate of demurrage, nor referring to the charter.  The charter specified demurrage at the rate of £12 per day.  The shipper having sold the goods and indorsed the bill of lading, the purchaser detained the ship on delivery.  On suit for demurrage, *held*, that the bill of lading was the only contract enforceable between the ship and the consignee, and that the latter was not liable to charter rates of demurrage of which he had no knowledge, but only for the value of the use of the vessel during her detention.

In Admiralty. Libel for recovery of demurrage in delivering cargo. *Wing, Shoudy & Putnam*, for libelant.
*D. Ullo*, for the Pietro G.

BROWN, J. The bark Pietro G., having been found entitled, on the decision of the cause, (38 Fed. Rep. 148,) to demurrage for delay of the consignee in not taking his goods "as fast as the ship could deliver," the parties have submitted to the court the question of the rate of demurrage to be allowed, upon a stipulation as to the facts, to avoid the expense of a reference. It is agreed in substance that the commissioner would find the value of the use of the vessel to be $40 per day, while the charter rate is £12 per day, or about $59. This court has held that in the assessment of damages in collision cases the rates of demurrage stipulated in charter-parties were not competent evidence as against third persons, being often somewhat in the nature of a penalty, and not always designed to fix exactly the value of the use of the vessel. *The James A. Dumont*, 34 Fed. Rep. 428. This fact is illustrated in the case of *The Belgenland*, 36 Fed. Rep. 504. That vessel was chartered to take a cargo of phosphates at certain rates, with six pence per ton per day demurrage; and, having lost the charter through a collision, and freights having fallen, she was rechartered for a precisely similar voyage at lower rates of freight, but with demurrage at eight pence per ton per day, or one-third higher than before; *i. e.*, when freights were high the owner could afford to take a less rate of demurrage; when freights were low, he would demand a higher rate of demurrage, to secure promptness in the delivery of the ship, so as to get the earliest advantage of any rise in freights. The Pietro G. was chartered to Kemp & Co. The cargo was shipped to different consignees, partly by Kemp & Co., partly by others. The bills of lading delivered to the other shippers than the charterers were made subject to "all of the provisions as per charter-party;" and such a clause would bind the consignee receiving the goods under the bill of lading to pay the charter rates of demurrage. But the bill of lading for the goods in question, shipped by Kemp & Co., and deliverable to order, did not contain this provision in regard to demurrage. In the margin was stated, "Cargo to be discharged as fast as ship can deliver," and nothing more. The charter contract with Kemp & Co. provided that the ship should have an "absolute lien on the cargo for demurrage." But Schultz, the purchaser from Kemp & Co., and the indorsee of the bill of lading, had no knowledge that the vessel was chartered, nor any notice of the charter-party, or of the rate of demurrage therein mentioned. Upon these facts I am of opinion that the ship cannot recover the charter rates so far as they are in excess of the value of the use of the vessel, as against the indorsee of the bill of lading. The indorsee and purchaser of the goods has a right to rely on the bill of lading as the contract between him and the ship, and as the only contract, so far as respects demurrage. Where the bill of lading makes no reference to any charter, and the indorsee has no notice of it, I think the bill of lading is the only contract which the ship can legally set up against him, whether she sues

for demurrage *in personam* or *in rem*.    *Bradstreet* v. *Heran*, 2 Blatchf. 116; *112 Sticks of Timber*, 8 Ben. 214; *The Querini Stamphalia*, 19 Fed. Rep. 123; *Leduc* v. *Ward*, L. R. 20 Q. B. Div. 479, 483.    It is not just that the indorsee should be held to the terms of a charter of which he has no notice.    As between the ship and the charterer, the charter would no doubt control.    *The Chadwicke*, 29 Fed. Rep. 521.    Justice requires that the master of the ship, when he signs bills of lading presented by the charterer, making the goods deliverable to order, should insert either the charter rates of demurrage, or some clause adopting the charter's provisions, as in the other bills of lading in this case, if he would enforce, as against *bona fide* indorsees, the rates contracted by the charter.    There is the more reason for this rule in the present case, because the demurrage arose upon an additional special contract made between the master and the indorsee that the vessel should go to the Erie basin to deliver his consignment after the rest of the goods were discharged.    The new contract was doubtless subject to the general terms of the bill of lading, but it is irrational to conclude that it was made with any reference to the high rates of demurrage named in the charter, of which the indorsee had no knowledge.    The charter rates were no part of the contract, either in fact or by legal implication.    I allow, therefore, demurrage at the rate of $40 per day, the value of the use of the vessel, for nine days, with interest.