## COLLINS et al. v. HUPP MOTOR CAR CORPORATION.

(District Court, E. D. Michigan, S. D. February 28, 1925.)

No. 348.

1. **Patents** ⊜328—**Pearson, 855,970, for fixture for automobile doors, held valid and infringed.**

The Pearson patent, No. 855,970, for device for holding door curtains of automobiles, held not anticipated and to disclose patentable invention, claims 1, 2, and 3 also held infringed.

2. **Patents** ⊜11 — **Automobile art separate from other vehicles.**

The automobile art should be, in a very large measure, treated as a separate and distinct art from that of all other classes of vehicles.

3. **Patents** ⊜112(5)—**Parol testimony of prior use held insufficient to invalidate patent.**

Parol testimony of a prior use, some 20 years before the testimony was given, and unsupported by any exhibits, held insufficient to overcome the presumption in favor of the validity of a patent.

4. **Patents** ⊜36, 49—**Acceptance and use of invention by manufacturers held of great weight on questions of invention and utility.**

Acceptance and use of a patented invention during the life of the patent by the greater number of large automobile manufacturers is entitled to great weight on the questions of invention and utility.

In Equity. Suit by Jeffrey M. Collins and Charles C. Blackmore against the Hupp Motor Car Corporation. Decree for complainants.

Stuart C. Barnes, of Detroit, Mich., and John F. Henigan, of Jackson, Mich., for plaintiffs.

Frederick P. Fish, J. L. Stackpole, and Hector M. Holmes. all of Boston, Mass., R. A. Brannigan, of New York City, and Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich., for defendant.

TUTTLE, District Judge. This is a suit for infringement of patent No. 855,970, granted to Walter B. Pearson June 4, 1907.

The situation presented to the court is that on the one hand the plaintiffs contend that they have a valid patent which has been infringed by the defendant, and on the other hand the defendant contends that the patent is void because of the state of the art, or that the claims must be construed so narrowly that defendant does not infringe.

Speaking generally, the patent shows a device for holding the ordinary door side curtains of an automobile. A rod, which can be attached to and detached from the door, holds the curtain at the opening edge of the door, and the curtain itself hinges at the other or hinged edge of the door. This rod is detachable, so that, when side curtains are not needed upon the car, the side curtains and rods can be taken off, leaving the car just as it would be if the side curtains were put on with knobs and taken off in the ordinary way.

[1] Taking up first the validity of this patent, we are met particularly with patent No. 121,922, to Alexander Wright, December 12, 1871, and patent No. 204,807, to D. E. Gale, June 11, 1878. Defendant also, in addition to these patents and the general state of the art, brings to the attention of the court and relies upon certain catalogs and certain prior uses, both in carriage and automobile doors.

[2] This court, having its private and official residence in the district where more than half of all the automobiles manufactured are made, is naturally and almost necessarily familiar with the growth and development of the automobile art. It is not easy to draw the lines which mark the outline of any particular art. The automobile art might, with some force, be contended to include all manner of vehicles. I am inclined to the view, however, that the automobile art should be in a very large measure treated as an individual and separate art from that of all other classes of vehicles. To illustrate what I mean: I am inclined to the view that the development in the automobile art would have been more rapid and

more successful, so far as the bodies and tops are concerned, if there had never been such a thing as a horse-drawn vehicle. It has been only natural that those who shape the designs, the material, and the engineering of bodies and tops should be influenced, and there is no question but what they have been greatly influenced, by the old, horse-drawn vehicle; but, as already indicated, looking at it now in the light of experience, rather than looking ahead as they were compelled to do, it would seem as if the effort to copy the horse-drawn vehicle had served as a stumbling block and a road leading to trouble, rather than to success. The uses and the needs of the two are so different that it has been necessary to get away almost entirely from everything in the shape of a body and top which was used in the horse-drawn vehicle.

I do not mean by this that the horse-drawn vehicle can be ignored, but, if taken from one art and placed in another, it is entitled to be weighed in that light, and, of course, the horse-drawn vehicle is very close in relation to the automobile. I should have in mind, and I do have in mind, that in spite of all of these necessary differences, which I have pointed out, that has been the road over which improvements have traveled and undoubtedly they should be measured in a large degree by the amount of ingenuity required to take the step from the horse-drawn vehicle over to the motor vehicle, so far as body and top are concerned.

It is true, nevertheless, that things which might be in some measure serviceable and satisfactory upon the horse-drawn vehicle would be useless as applied to the automobile. I think it ought also to be borne in mind that, even as to these prior patents in carriage doors back in the '70's, they never came into general, common use. As I view it, one of the reasons why this never did result is because neither of these patents for holding side curtains on horse-drawn vehicles, to which I have already referred, provided for detachable construction. The exhibits shown me disclose a side curtain which would be permanently attached to the vehicle and rolled up into place. In other words, in both Wright and Gale, we find little more than a door with a window in it, the opening in the window being covered by a side curtain, the entire door always remaining on the vehicle in view and in place, and in the same place. There is testimony as to a horse-drawn vehicle which had side curtains permanently fastened to the top, which side curtains rolled up and fastened at the top,

part of the roll extending over the door and part over the portion which did not open, capable of being rolled down so that each covered the door and the portion adjoining the door. I do not believe that any one would ever want to own that kind of a side curtain. It is not practical to make anything in the shape of a roll and then bend it in the middle. A roll or cylinder is just the antithesis, in form and design, of a device capable of being bent in the middle. A roll does not tend to bending, and an attempt to bend it is not good design, and, in my judgment, would not be successful or practical.

[3] There is testimony in this record relative to alleged prior uses at Pittsburgh, Pa., of structures carrying the curtains on the doors of automobiles. This testimony, if definite, certain, and satisfactory, would exhibit structures so like the patent in suit that it would raise doubts in the mind of this court as to the validity of this patent. The only structure shown to the court and appearing in the record is the one made long after this patent was granted. The other proofs rest entirely in the memory of witnesses, both as to the time of the use and as to the particular form of the structure. There are no contemporaneous exhibits, such as drawings, photographs, books, invoices, etc. They are talking about what they claim happened back in the year 1906, almost a score of years ago. It is entitled to careful consideration, but I have given it that careful consideration. I do not feel sufficiently certain of that oral testimony; it does not give me that feeling of security as to its accurateness which would justify me in the overturning of the presumption of validity which the law gives to a patent, and that certainty which the law requires a judge to feel in order to overturn and set aside a patent. Barbed Wire Patent, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118,.39 L. Ed. 153; Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

Every one who is familiar with automobiles, without reading this record, would know that the structure covered by this patent in suit came into very general use. It is true that it was some time following the granting of this patent, but automobile manufacturers have been very slow in adopting improvements in accessories. If there was any one thing about an automobile which did not have anything to do with the running of it, and which was a nuisance to the ordinary user of an open car, it was the side curtain.

For many years no automobile concern made a side curtain that would come on and off very many times without becoming unworkable. Every one knows that it was a real nuisance to have to put side curtains on and take them off several times in one day, if it happened to be a sunshiny, cloudy, rainy day, combined. So far as has been satisfactorily proved to this court by this record, and so far as I am advised, the patent here in suit is the first suggestion in the automobile art of a remedy for this unpleasant and difficult problem. The patent in suit furnishes complete relief. The side curtains can be put on, the rods put in place, the curtains slipped over the rods, and while the curtains are on one can get in and out of the automobile by simply opening the door; then, when the curtains are no longer needed, they can be taken off and put away, and the rods come out and are out of sight. No one cares to have a rod or anything of that kind sticking up on the door or frame of the door of an open car, unless it is necessary. In fact, the effort has been to get rid of as many braces as possible. Automobile manufacturers now use the windshield for the forward attachment in order to avoid an unnecessary brace. They have done everything possible to get rid of unnecessary side braces and leave that space as open as possible; so that it would be undesirable, and no one would want to have, an extra frame (as shown in those horse-drawn vehicle exhibits), an extra brace, or anything superfluous running up and down the side of an automobile, for the purpose of holding a side curtain, when the side curtain was not in use.

All this leads to the conclusion that there was a real field there for improvement; there was a real need, and this structure has met that need. As I see it, this structure performs a real service in the automobile field in this matter of troublesome side curtains. If it were to be made a solid part of the body of the door, it would be little better than the winter top. Before this invention we heard a lot about the winter top. Winter would come on, and people who could not afford a closed car would take their old open car and have what they called a winter top put on. I do not hear much about winter tops any more. This way of opening the doors seems to make it possible for people who use an open car to simply go on using it during the winter time. Its use is so convenient, and it is so easy to get in and out of it, that it satisfies them. When you look at the field and the advance made therein by a particular structure, you

can usually determine without much difficulty whether or not the man who brought about that structure has done something that is worth while—something that rises to the dignity of genius—which entitles him to a patent, or whether it is simply the work of a mechanic, which should not be rewarded with a patent. It seems very clear and very plain to me that here is a step worth while, one that has been of real value in a big art, and brought actual relief, comfort, and pleasure to thousands and thousands of users of automobiles—one which constitutes invention and involves novelty and utility.

[4] Added to my own notion of this record, and the conclusion which I think should be reached because of the state of the art, and the step taken by this particular patent, I am helped and strengthened in that belief because of what the wise men, looking for a chance to make money in the automobile world, have themselves done with it. I am justified in taking judicial notice of the fact that the men engaged in the automobile business have been some of the brainiest men of this generation, and they have been aided and advised by the best patent lawyers in the country. They have all been looking for a chance to get rich, and most of them have. They have not been paying out their money for their health, but they have paid for patents because they thought there was some merit in them. Here I find a patent which almost all of these great manufacturing concerns have recognized and paid tribute to. As a matter of fact, that ought to have weight with a court, and I am glad that this weight coincides with my own views, because, if the two were pulling in opposite directions, I should be in trouble. I should think that my judgment was different than that of all of these automobile men, who know so much more about this business than I do, and I should feel that I must be mistaken about it. As it is, I see it in the same light. If I had been advising them about this patent, I should have said: "You had better pay them, and buy your right to use this device, rather than contest the patent." Evidently that is what has been done with this patent practically during its entire life, and now, when the patent has expired, for the first time this patent comes into court. So this history of the patent among the manufacturers of automobiles fits in with my own interpretation of the patent and of the art.

Now I come to the part that bothers me more than any other part. I may be wrong about what I have said, but I do not feel any doubt about it. I feel very sure about the validity of this patent. I come down to the particular claims. It does not seem to me of any real importance to the parties involved in this suit whether I sustain claims 1, 2, and 3, or whether I sustain claim 2 alone. I have no doubt at all about my duty to hold claim 2 valid, and it differs from the others only in that it mentions specifically and definitely the detachability of the supporting rod. That thought, of course, is running through claims 1 and 3; it is running through this entire patent. If you took that part out of the patent, I should change very materially what I have been saying, because, in my judgment, that, more than any other single element, is the thing that makes this patent valuable. You need also to have the offset described in claim 3, so as to adjust your curtain to fit the other side curtain that it comes in contact with, and to fit against the top where it goes up against the top canopy of the automobile. Of course, it could be said that you have your invention, and that anybody would know how to bend the device. In a measure that is true, yet all these things run in together. I ought to hold all of these claims good, so that the patentee may have the protection to which he is entitled in the invention. If I were to split hairs about this, I might be able to reason out that I should hold claims 1 and 3 void, because they do not mention the detachability, and detachability is a very important part of this; it runs through the whole patent. But I think it is my duty to protect plaintiffs in this valuable invention and patent, and I therefore hold claims 1, 2, and 3, the claims in suit, valid.

I also hold these claims infringed, because, while defendant's structure differs in some particulars, I think that the most that can be said for the defendant's structure is that in some respects it is an improvement on the device of the patent here in suit. The features in which it differs are mere additions to, rather than real changes in, that device.

In other words, because the defendant's construction has the strengthening bands of metal at the top and at the bottom of the side curtain, I do not see that this in any way relieves from infringement.

Then, as to the manner of the attachment of the rod at the bottom of the curtain in the defendant's structure, I do not think that the fact that it is fastened to the curtain in such a way that it can be turned around, rolled up with the curtain, and laid away

with it, instead of being separate and taken off separately, avoids infringement.

And again, as to the prong or branch in the bottom part of the rod of the defendant's structure and the manner of fastening it to the door by simply dropping into a socket, I do not discover in that anything which would relieve of infringement. I therefore hold the three claims in suit valid and infringed, and a decree will be entered, the patent having expired, not for injunction, but for the usual profits and damages and costs.