ECLIPSE MACH. CO. et al. v. J. H. SPECIALTY MFG. CO.

No. 6034.

District Court, E. D. New York.

April 7, 1933.

Thomas J. Byrne, of New York City (W. B. Kerkam and L. H. Sutton, both of Washington, D. C., of counsel), for plaintiffs.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon, Frederick Bachmann, and W. Houston Kenyon, Jr., all of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is a suit brought by the plaintiffs for relief by injunction and damages for the alleged infringement by the defendant of patent No. 1,258,302, issued to Vincent Bendix, for starter, granted March 5, 1918, on an application filed March 15, 1916.

The plaintiffs are the Bendix Aviation Corporation, holder of the legal title to the patent, and the Eclipse Machine Company, the exclusive licensee thereunder.

The defendant is a New York corporation, with its principal place of business in this district.

The defendant has interposed the defenses of invalidity, noninfringement, and unclean hands.

The patent in suit relates to the well-known Bendix drive, employing an automatically meshing and demeshing pinion, equipped with a flattened spring, as therein described.

Plaintiffs charge infringement of all of the eleven claims of the patent in suit, of which claims 1, 2, and 3 are contended to be per se claims covering the spring "for use in transmission mechanism in engine starting apparatus," and the remaining claims are for the combination of which the spring is a part.

Claims 1 and 4 of said patent read as follows:

"1. For use in transmission mechanism in engine starting apparatus, a spring cooperating with such mechanism and forming a yielding driving connection therein in the line of transmission of power, said spring being of the coiled type and having its coils flattened in a direction at right angles to the axis of the coil."

"4. In engine starting apparatus, a transmission mechanism including two rotatable members, one of which has a longitudinal movement, and a yielding driving connection between such members consisting of a coiled spring having its coils flattened in a direction at right angles to the axis of the coil and arranged for torsional and for extension and compression actions."

The patent in suit was adjudicated after a full trial on the merits in the suit brought by Eclipse Machine Company v. Eclipse Tool Co., Inc., Hubert McGinnis and David Ferguson, in the United States District Court for the District of Indiana, Indianapolis Division, decree dated June 30, 1926.

In the suit brought by Eclipse Machine Company and Bendix Corporation v. Brown & Green Ignition Sales Co., Inc., in the United States District Court for the Southern District of New York, decree dated April 2, 1929, the decree is in the form of a consent decree, but was made after proceedings on a preliminary injunction motion, exchange of expert affidavits, and the putting in of the prima facie case on the trial when the defendant's counsel became ill and an adjournment of the trial was granted. Whereupon the real defendant in that suit, the Wickwire Spencer Steel Corporation, solicited and procured a license from plaintiffs, which is still in effect, and on which the licensee has paid plaintiffs as royalties a sum in excess of $131,000.

Consent decrees have also been made in the following suits:

Eclipse Machine Company v. Automotive Manufacturers Outlet, Inc., Hy. Mendelson, Charles R. Dietz, Harry Porte, and Joseph Porte, in the District Court for the Southern District of New York, decree dated November 21, 1925.

Eclipse Machine Company v. Alfred S. Lukens, trading under the name of A. S. Lukens Co., in the United States District Court for the District of Indiana, Indianapolis Division, decree dated December 21, 1925.

Eclipse Machine Company v. Charles Fischer Spring Company, Inc., in the United States District Court for the Eastern District of New York, decree dated October 11, 1926.

Eclipse Machine Company v. Welworth Auto Supply Company, Inc., Philip Frankel, and Benjamin Frankel, in the United States District Court for the Eastern District of New York, decree dated November 20, 1925.

The litigation on the patent attests the utility of the device. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 441, 31 S. Ct. 444, 55 L. Ed. 527; Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064; Benbow-Brammer Mfg. Co. v. Straus (C. C. A.) 166 F. 114.

The Bendix drive from the time of its appearance on the market in 1914, when about 5,000 were sold, has been sold in increasing numbers, over 6,000,000 having been produced in 1929, and over 40,000,000 in all having been sold to date, aggregating a sum of over 80,000,000.

As originally produced by Bendix, there was no yielding driving connection or spring between the starting motor and the pinion.

That construction was found to be non-commercial, due to the tremendous shock and strain involved in instantaneously applying the electrical torque of the motor and the kinetic energy of rotation of the armature and connected parts to a stationary engine having great inertia.

To solve the problem, Bendix conceived of the use of a spring interposed between the starting motor and the pinion that meshed with the flywheel gear, and for that purpose first employed a spring round in cross-section such as is shown in Bendix United States patent, No. 1,125,935. It appears that a drive equipped with such a spring was shown at the Automobile Show in New York in January, 1914.

This worked satisfactorily on light and relatively small engines but not on large ones, either in single or double reduction installation, as in that use the springs were distorted and broken.

The engineers of the Westinghouse Electric & Manufacturing Company, which had been approached by the plaintiff Eclipse Machine Company in an effort to interest it in the drive, were opposed to the use of a spring as a yielding driving connection, and recommended that a friction clutch like that of the Conrad patent, No. 1,413,829, be substituted therefor.

This presented a serious problem, as success depended upon capacitating the drive for universal use on light and heavy installations, and single and double reductions.

Bendix, assisted by the two Elletts, devoted his time for about six months in an attempt to solve the problem and, first, by following the suggestion of the Westinghouse engineers, they built and tried clutches. This, of course, overcame the breaking of the springs, as there were none in the transmission of torque in those constructions.

The clutch, however, lacked the capacity to perform other necessary functions of mesh enforcement.

Other efforts were made without success, until in May, 1914, Bendix suggested the use of a spring that was square in cross-section, each side being 7/32 of an inch. That spring developed sufficient torsional strength but did not solve the difficulty with respect to end to end binding of the pinion against the flywheel gear.

In June, 1914, Bendix solved the problem by the flattened spring of the patent in suit. A drive equipped with that form of flattened spring was successfully tested at Westinghouse on the double reduction installation.

The application for the patent in suit was originally rejected under date of April 26, 1916, on the ground that Bendix patent, No. 1,125,935, showed a spring round in cross-section in the same relation as the spring in the application of the patent in suit, that it showed the same combination, the only difference being in the specific spring structure.

The claims were rejected as being drawn to old combinations.

By letter of April 23, 1917, the patentee set forth reasons for approving his application, and thereafter, under date of May 18, 1917, the examiner made this statement: "Upon further consideration, the rejection of the claims on the ground of old combination is waived on the ground that it is novel to associate the particular spring in a starter mech-

anism, the spring was specially designed with the requirements of its use in mind, and the association of the particular spring with the other elements is apparently productive of improved results in this art."

By amendment of November 26, 1917, claims 1 to 8 of the patent in suit were introduced and the case allowed on December 26, 1917.

Defendant, comparing the starter of the patent in suit with the starter of the prior Bendix patent, No. 1,125,935, contends that the concrete thing achieved is merely a substitution of one form of power-transmitting and shock-absorbing coiled spring for another, in a combination that is otherwise unchanged in any particular, either in its elements or their dimensions, or in the mode of their combination, and that develops the same functions and operation in kind, and produces the same results in kind; and that the differences are merely in degree and are such as characterize and accompany the substituted form of spring as such when compared with the spring for which it is substituted.

In support of this contention the defendant refers to the testimony of its expert Rockefeller, who says that mechanically the only structural change from the starter of the earlier Bendix patent, No. 1,125,935, to the starter of the patent in suit, is the substitution of spring 7 of the latter, made out of flat wire, for spring 5 of the former, made out of round wire, and that the change was merely good engineering. He further says that both forms of coiled spring were old and well-known tools of the art, interchangeably in general use, to be selected for particular uses according to their known characteristics and special fitness for that use. And by way of illustration refers to certain publications and patents, and discusses in detail the following patents: Henry, No. 686,065; Swan, British, No. 2634, of 1913; Pitt, British, No. 1278, of 1877; Browne, No. 359,841; Leaman, No. 350,631.

Defendant cites, as authority for its contention that the substitution in the patent in suit of the flat wire spring for the round wire spring of a prior patent to Bendix does not constitute invention, Thompson Mfg. Co. v. Walbridge (C. C.) 60 F. 91, affirmed (C. C. A.) 67 F. 1021; Coates v. Boker (C. C. A.) 119 F. 358; Bradley v. Eccles (C. C. A.) 143 F. 521; Star Hame Mfg. Co. v. United States Hame Co. (C. C. A.) 227 F. 876, from which it contends that this case is not distinguishable.

It likewise points to Pennsylvania Railroad Co. v. Locomotive Engine Safety Truck Co., 110 U. S. 490, 4 S. Ct. 220, 28 L. Ed. 222, and Ansonia Brass & Copper Co. v. Electrical Supply Co., 144 U. S. 11, 12 S. Ct. 601, 36 L. Ed. 327, in support of its contention that the patent is invalid for lack of invention, as a mere double use, and to Estey v. Burdett, 109 U. S. 633, 640, 3 S. Ct. 531, 27 L. Ed. 1058; Preston v. Manard, 116 U. S. 661, 664, 6 S. Ct. 695, 29 L. Ed. 763; American Road-Machine Co. v. Pennock, 164 U. S. 26, 41, 17 S. Ct. 1, 41 L. Ed. 337; Walker on Patents (6th Ed.) p. 81, § 68.

I do not agree that the cases cited are authority for defendant's contentions, but on the contrary, on the facts as shown in this suit, I find that they are not in point.

The defendant also contends that the contemporaneous documents of dates prior to March 15, 1916, in evidence in this case, show that no one, neither Bendix nor Ellett, nor Ellett's son Stephen, nor the Westinghouse engineers, nor any one connected with plaintiff's organization or with the Bendix starter or its development or use, ever once thought of the substitution of the spring 7 in it for the spring 5 of the earlier Bendix patent, No. 1,125,935, as an act requiring or constituting invention.

At the outset it is well to remember that defendant is the exclusive licensee under the patent to Nygard, issued on May 10, 1932, the spring manufactured by the defendant being illustrated in Fig. 1 of the patent drawings; therefore the defendant is maintaining that the alleged improvement is patentable, while denying that the spring of the patent in suit, which is alleged to be improved, is invention.

The yielding driving connection or spring in the Bendix drive is called upon to perform, and necessarily does perform, many functions in the successful operation of the device. The Bendix drive constitutes a connection between the electric motor and the internal combustion engine in an automobile, and the yielding driving connection or spring is the dominant element.

When the circuit of the starting motor is closed, the armature and its shaft will, during the first three-fourths of a revolution, accelerate up to something more than 1,000 revolutions per minute. The inertia of the pinion will, by virtue of its threaded mounting, cause the pinion to automatically move longitudinally into mesh with the flywheel gear until it engages a stop on its shaft. Thereafter the electrical torque and the deceleration torque,

due to the kinetic energy of the rotation of the armature and connected parts (which deceleration torque, at the time the driving relation is established between the pinion and flywheel, has attained a value twice as large as that of the electrical torque), are necessarily delivered to the pinion to break the engine away and start the same. If no yielding driving connection or spring were interposed, all of this energy would be delivered in the form of a distinctive blow. The interposed spring, however, transforms the distinctive blow into a beneficent push. The yielding of the spring interposes a time element in the application of the electrical torque and kinetic energy is poured therethrough and utilized in the starting operations. None of it is wasted.

It is not necessary to specifically point out the many functions which the yielding driving connection or spring of the patent in suit is called upon to perform, but they are all performed automatically, and no spring in the prior art was called upon to perform any such diverse functions.

Flattened springs are shown in the prior art for use only where the compressive function was involved, as in car springs and the like (a nonanalogous art) or as flexible couplings.

The defendant offered in evidence, both as anticipations and to show the prior state of the art, many patents disclosing springs round, square, and flattened; but it is unnecessary to consider all of them separately and it will be sufficient to consider only those selected by defendant's expert as the best references.

The following patents cited by defendant's expert as the best references disclose springs, but in none of them do the springs function as the spring of the patent in suit:

The Henry patent, No. 686,065, is for a door check and closer. The spring shown therein is wound up when the door is opened. The tension impressed on the spring by the opening of the door is added to the primary tension, so that when the door is wide open, the spring has been wound through as many degrees as intended. The only function of the spring is to give up the stored energy and effect the closure of the door, and this delivery of energy may occur a few seconds after the door is opened, or at any other time, depending on how long the door is held open. In door checks you may employ not only flat springs but round springs and clocklike springs. A coiled spring having a flat cross-section such as shown in the Henry patent is

pretorqued. The Bendix drive spring is not pretorqued.

The Swan British patent, No. 2,634, of 1913, is for improvements in flexible couplings and flexible shafts. The object of the invention is to provide a simple and effective construction of flexible coupling for power shafts, in which the flexible member is a helical spring or series thereof coaxial with the shafts and connected at its ends to spiders or flanges, the one on the driver, the other on the driver shaft, which is so devised and arranged that it is substantially inflexible to torque passing through it, and flexible in response to angular movements due to want of alignment of the shaft which it connects; the invention being also applicable as a flexible shaft. The longitudinal movement of the spring of the Swan patent as a whole is prevented by the ball and socket joint, so that the spring can only compress or expand on one side at a time, and when expansion takes place on one side, compression must take place on the other.

A spring which is substantially inflexible to torque would not be satisfactory for the spring of the patent in suit.

The Swan patent does not disclose a member to be meshed with another member, nor the holding that member in mesh under varying conditions, nor enforcing the mesh of one member with another and utilizing the functions of the springs, in that manner of enforcing it.

The spring of the Swan patent could not be substituted for that of the patent in suit.

The Pitt British patent, No. 1278, of 1887, for improvements in dental and surgical engines, discloses as part of the invention a flexible driving spring connecting the ends of the stiff shaft sections, so that greater torsional strength is given to the spring and jumping or irregular action avoided, without interfering with the necessary flexibility of the spring. A spring of the kind used in such an engine was offered in evidence as Exhibit 36. Such a spring could not have solved the problem of the patent in suit, and certainly could not be substituted for the spring of the patent in suit.

The Browne patent, No. 359,841, for flexible driving-spring, discloses a spring of the kind offered in evidence as Exhibit 36, which, as I said about the spring in the Pitt patent, could not have solved the problem of the patent in suit, nor could that spring be substituted for the spring of the patent in suit.

The Leaman patent, No. 350,631, for

shaft-coupling, the object of the invention being to provide a coupling for shafting which shall be flexible, and thus enable the shafting to run with ease, if not in perfect alignment, and also to expand and contract or sustain longitudinal thrust or strain. In this patent there are series of springs arranged between the ends of two shafts, the object being the connecting of shafts that might be out of alignment. Those springs are not the same design as the spring of the patent in suit, nor could they be substituted for the spring of the patent in suit. No problem of a member that is to be meshed with another member; and the holding of that member in mesh under varying conditions, is found in the Leaman patent. Neither is the problem of enforcing the mesh of one member with another and utilizing the functions of the springs, in that manner enforcing it, found as the compression function of the spring in that patent is used for another purpose.

From an examination of all of the prior art patents offered in evidence in this case, it is apparent that none of them show an interposed yielding driving connection or spring that operates so intelligently to perform the manifold functions which are necessarily performed in the starting mechanism, having an automatically meshing and demeshing member, as does that of the patent in suit.

While these functions were performed in varying degrees by the drive spring of round cross-section shown in prior Bendix patent, No. 1,125,935, they were thereby performed only comparatively ineffectually and to a limited extent.

That invention was involved in the use of the flattened spring of the patent in suit seems to me to be clearly established, because the testimony of both Ferguson and McGrath, both of whom are familiar with the drive of the patent in suit, shows that new results were secured by the use of the flattened spring, and that means increased efficiency. Webster Loom Company v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Lyman Mfg. Co. v. Bassick Mfg. Co. (C. C. A.) 18 F.(2d) 29; Collins v. Hupp Motor Car Corporation (D. C.) 4 F.(2d) 272; Hartford v. Moore (C. C.) 181 F. 132.

Further, I am convinced that invention is involved because the device with the flattened spring of the patent in suit has been promoted from the field of limited utility of the round spring drive, to one of universal utility, however simple may be the change. Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Lyman Mfg. Co. v. Bassick Mfg. Co.,

supra; Star Brass Works v. General Electric Co. (C. C. A.) 111 F. 398; Weber Electric Co. v. National Gas & Electric F. Co. (D. C.) 204 F. 79, affirmed (C. C. A.) 212 F. 948.

The device of the patent in suit has promoted the comfort and happiness of automobile users, making what was laborious, now but the closing of an electric switch. From a very limited number of self-starters, which were complicated and expensive, used on automobiles before the invention of the patent in suit, the number has so greatly increased that the drive with the flattened spring has become standard equipment, and from 80 to 85 per cent. of the automobiles of the world are equipped with it.

The need and the demand were universal for such a starter, and both have been satisfied by the invention of the patent in suit, which has made the starter adaptable for light and heavy jobs equally efficient on cheap cars and expensive cars, and is the last step in the solution of the problem, and constitutes invention. H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A.) 262 F. 415, 417; Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277.

The position of unchallenged supremacy in the commercial world attained by the structure of the patent in suit leads me to the conclusion that this court should endeavor to sustain rather than defeat the claims. Consolidated Rubber Tire Co. v. Firestone Tire & Rubber Co. (C. C. A.) 151 F. 237, 238, affirmed by Supreme Court, Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527.

The situation here seems to me to be best expressed by the court in the last-cited case when it said: "The combination of the patent operates, we think, to produce a new result or an old result in a manner which is a vast improvement over anything in the prior art."

It certainly seems clear to me that the failure of the skilled engineers at the Westinghouse plant, as well as the patentee and his assistants, for six months after the failure of the drive with the round spring, to solve the problem, and the insistence of the engineers to discard springs and use the clutch in place thereof, is proof that the discovery of the patentee of the adaptability of the flattened spring was not obvious, but on the contrary the discovery of the adaptability of the flattened spring solved the problem and was invention.

The accomplishment of that which those skilled in the art say cannot be done, is not do-

ing the obvious, but when the result, as in this case, changed failure into success, it is invention. Toledo Computing Scale Co. v. Computing Scale Co. (C. C. A.) 208 F. 410.

This does not seem to me to be answered by the contention of the defendant that the path actually followed by the patentee may have been the creature of ignorance or prejudice, or an incorrect or belated diagnosis of the problem, as there was probably more learning and engineering skill in the lighting and starting department of the Westinghouse Company at that time than in any other similar concern in the country, and the patentee certainly was not without skill, and yet it was only after six months of unremitting labor in dealing with a new device that the patentee discovered the solution in the use of the flattened spring.

■ In determining whether what the patentee accomplished was invention, we must endeavor to view the accomplishment with reference to the state of the art at the time of the putative invention, and not in the light of knowledge after the fact. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277, supra; Traitel Marble Co. v. U. T. Hungerford Brass & Copper Co. (C. C. A.) 18 F.(2d) 66.

Thus viewing it, it seems to me that the ultimate solution of the problem was secured by the flattened spring of the patent in suit. American Graphophone Co. v. Universal Talking Mach. Mfg. Co. (C. C. A.) 151 F. 595.

Defendant says that the only difference between the Bendix patent, No. 1,125,935, and the patent in suit is that the spring of the former is a spring round in cross-section, and the spring of the latter is a spring flattened with its longer dimension at right angles to the spring.

■ Granted that the change was a small one from the round spring to the flattened spring, but it was that small change which remedied the defect and made the drive perform with increased efficiency and effect all of the various functions that the spring was called upon to perform.

The idea that such change could be successfully made was invention even though means that were simple and old should be employed for carrying it out. Hobbs v. Beach, 180 U. S. 383, 21 S. Ct. 409, 45 L. Ed. 586; Judelson v. Hill Laundry Equipment Co. (C. C. A.) 22 F.(2d) 262; Kurtz v. Belle Hat Lining Co., supra; Benjamin Elec. Mfg. Co. v. Northwestern Elec. E. Co. (C. C. A.) 251 F. 288.

We should not lose sight of the fact that defendant's claim of obviousness and lack of invention loses much of its force when we consider the evidence of the defendant's expert on cross-examination, who would not say that it would not be invention to substitute one for the other, where round and flat springs might be used with equal effect, for general purposes.

The fact that the prior art is replete with instances of patents showing flattened springs, as specified by the defendant, does not detract from the novelty and invention of the patent in suit, as no one of such springs involved the idea of the spring of the patent in suit, teaches anything pertinent thereto, performs the manifold functions thereof, and none of them is used in the environment where the conditions of use are the same or similar thereto, and none of them could be used in the Bendix drive without substantial change.

A consideration of the subject-matter of the following patents shows how strongly they support this contention: Forsyth v. Garlock (C. C. A.) 142 F. 461; Hartford v. Moore (C. C.) 181 F. 132; Potts & Co. v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275; United States Fire Escape Counterbalance Co. v. Joseph Halsted Co. (D. C.) 246 F. 947, affirmed (C. C. A.) 257 F. 95; Barry v. Harpoon Castor Mfg. Co. (C. C. A.) 209 F. 207; National Hollow B. B. Co. v. Interchangeable B. B. Co. (C. C. A.) 106 F. 693; Van Heusen Products v. Earl & Wilson (D. C.) 300 F. 922; Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Lakewood Engineering Co. v. Walker (C. C. A.) 23 F.(2d) 623.

No flattened spring of the prior art has been shown which was intended for the purpose of the spring of the patent in suit, nor employed under such conditions of use, and none has the characteristics required by the functioning of the engine starters, nor is there in evidence any structure of the prior art, which any person using it, before the teaching of the patent in suit, would have understood could be used in the way taught by the patentee.

Anticipation has not been shown. Radio Corporation of America v. Twentieth Century R. Corp. (C. C. A.) 19 F.(2d) 290, 293; H. D. Smith & Co. v. Peck, Stow & Wilcox Co. (C. C. A) 262 F. 415, 417; Diamond Drill & Machine Co. v. Kelly Bros. (C. C.) 120 F. 282, 287, affirmed (C. C. A.) 123 F. 882; Aeolian Co. v. Hallett & Davis Piano Co. (C. C.) 134 F. 872, 878.

Defendant contends that the patentee of the patent in suit is not the first inventor of the flattened spring for the drive, and cites the three following described patents; but that contention is not sustained.

The date of invention of the patent in suit is June, 1914, and that is clearly established by the drawings and invoices in evidence, and the possession of the invention by the Eclipse Machine Company, prior to the date of the filing of any of the applications for said patents.

Patent No. 1,229,776, to John P. Nikinow, assignor to Westinghouse Electric & Manufacturing Company, for starting mechanism for gas engines, was granted June 12, 1917, on application filed December 29, 1914.

Patent No. 1,231,682, to Charles E. Wilson, assignor to Westinghouse Electric & Manufacturing Company, for starting and generating mechanism, was granted July 3, 1917, on application filed November 25, 1914.

Patent No. 1,247,793, to Alexander Churchward, assignor to A.-B.-C. Starter Company, for starting and generating system for automobiles, was granted November 27, 1917, on application filed October 26, 1915.

Nikinow and Wilson were engineers of the Westinghouse Electric & Manufacturing Company.

The patents were issued to that company.

The invention of the patent in suit was disclosed to the Westinghouse Electric & Manufacturing Company and to the said engineers, by the patentee of the patent in suit, in June, 1914, at which time the Bendix drive, with the flattened spring, was successfully operated at the plant of the said Westinghouse Electric & Manufacturing Company.

There is no description of the shape of the spring in any of the patents to Nikinow, Wilson, or Churchward lastly hereinbefore described.

The defendant pleaded the defense of dedication of the invention of the patent in suit, but no testimony was offered at the trial of this defense. This defense is based upon what defendant contends is a full unclaimed disclosure in Bendix patent, No. 1,172,864, issued on February 22, 1916; the application for the patent in suit having been filed about three weeks thereafter, on March 15, 1916.

■ I find no intent on the part of the patentee to abandon the meritorious invention of the patent in suit, and dedication will not be found unless it is absolutely necessary to do so. Traitel v. Hungerford, supra; Van Heusen Products v. Earl & Wilson, supra.

The intent to abandon did not exist, and the circumstances do not require that the intent be by law imputed. Gear Grinding Mach. Co. v. Studebaker Corporation (C. C. A.) 270 F. 934.

■ The law does not require dedication to be found in this suit.

Section 4888, Revised Statutes (35 USCA § 33), contains a mandatory requirement of a written description of the invention of the patent in suit, in full, clear, concise, and exact written words. The drawing's sole function is to help out the written description.

There is no written description of a flattened spring in Bendix patent, No. 1,172,864, therefore there is no disclosure in such patent sufficient to support the right to claim and protect an invention of such spring, and without such a disclosure there can be no dedication. This is clearly so when, as in the said patent No. 1,172,864, there is only an incidental delineation in the drawing of a flattened spring, that was unnecessary for the purpose of the invention of that patent, which relates to novel means for mounting the drive spring, and the particular shape or configuration of that spring had nothing to do with those means. The shape or configuration of the spring was not and could not have been claimed in that patent. American Steel Foundries v. Scullin-Gallagher I. & S. Co. (C. C. A.) 197 F. 49; Wolff Truck Frame Co. v. American Steel Foundries (C. C. A.) 195 F. 940, 945; Simpson & Newport News Shipbuilding & Dry Dock Co. (D. C.) 18 F. (2d) 318, 322; Fulton Co. v. Powers Regulator Co. (C. C. A.) 263 F. 578; Stewart v. American Lava Co., 215 U. S. 161, 30 S. Ct. 46, 54 L. Ed. 139.

■ Where the written description is silent regarding some feature, the fullest disclosure of that feature by the drawing will not suffice to support a claim. Tinker v. Wilber Eureka M. & R. Mfg. Co., 1 F. 138, 139; Frazer v. Gates & Scoville Iron Works (C. C.) 22 F. 439, 442; Gunn v. Savage (C. C.) 30 F. 366, 369; Windle v. Parks & Woolson Mach. Co. (C. C. A.) 134 F. 381.

■ The reliance being on the drawings, and the specification containing no suggestion of the construction of the spring, patent No. 1,172,864 does not anticipate. A. R. Mosler & Co. v. Lurie (C. C. A.) 209 F. 364, 367; Canda v. Michigan Malleable Iron Co. (C. C. A.) 124 F. 486, 492; Atlantic, Gulf & Pacific Co. v. Wood (C. C. A.) 288 F. 148, 155; Victor Talking Machine Co. v. John Wanamaker (D. C.) 275 F. 448.

Phillips v. Sensenich, 1908 C. D. 391, cited by defendant, is not authority to the contrary, because while the applicant by the rules of the Patent Office has a right to add claims by amendment, to cover matter which is disclosed in his drawings but not originally claimed, where the original specifications refer to such matter as an essential part of the construction sought to be patented, he has not such right where the matter is not referred to in the specifications.

The patentee could not even have reissued patent No. 1,172,864 to protect the flat spring shown in the drawing of that patent but not described in writing. Hailes v. Albany Stove Company, 123 U. S. 582, 8 S. Ct. 262, 31 L. Ed. 284; Hoskin v. Fisher, 125 U. S. 217, 8 S. Ct. 834, 31 L. Ed. 759; Ives v. Sargent, 119 U. S. 652, 662, 7 S. Ct. 436, 30 L. Ed. 544.

If patent No. 1,172,864 had contained the statutory written description of the invention of the patent in suit, cancellation of the claims to the spring would have been required by the Patent Office, on the ground that it was a separate and segregable invention, and an application to the independent subject-matter could be filed any time within the statutory two year period. Eastern Paper-Bag Co. v. Standard Paper-Bag Co. (C. C.) 30 F. 63, 65; Ludlum Steel Co. v. Terry (D. C.) 37 F.(2d) 153; Shipp v. Scott School Tp. (C. C. A.) 54 F. (2d) 1019.

The following cases cited by defendant are not in point, in that they do not relate to the defense of dedication: Ball & Roller Bearing Co. v. F. C. Sanford Mfg. Co. (C. C. A.) 297 F. 163; In re Boyd (Cust. & Pat. App.) 55 F.(2d) 493, 494; Jockmus v. Leviton (C. C. A.) 28 F.(2d) 812.

This is likewise true of Davis-Bournonville v. Alexander Milburn Co. (D. C.) 297 F. 846. In the patent there in suit the claim itself contained a written disclosure as to one of the immaterial features, the true invention being fully described in the specification, and the existence of this written disclosure of the immaterial feature appearing only in the claims was justified by reference to the illustration of the drawing.

The following cases cited by the defendant are not in point, for the following reasons:

Miller v. Eagle Manufacturing Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121, for the reason that in that suit the two claims of the patents in question were for the same invention.

O. H. Jewell Filter Co. v. Jackson (C. C. A.) 140 F. 340; Royal Co. v. Tweedie (C. C.

A.) 276 F. 351; Rip Van Winkle Wall Bed Co. v. Murphy Wall Bed Co. (C. C. A.) 1 F. (2d) 673, for the reason that in those cases the patentee by amendment of his claims, or express recitation in his specifications, is estopped to contend that his claims define a broader invention than expressed.

Ely Norris Safe Company v. Mosler Safe Company (C. C. A. 2) 62 F.(2d) 524, decided January 9, 1933; Ball & Roller Bearing Co. v. F. C. Sanford Mfg., supra; Houser v. Starr (C. C. A.) 203 F. 264; Chicago Ry. Equipment Co. v. Perry Side Bearing Co. (C. C.) 170 F. 968; Directoplate Corp. v. Donaldson Lith. Co. (C. C. A.) 51 F.(2d) 199, for the reason that in those suits only one invention had been made, and a second patent was held invalid because its subject-matter could only have been protected in the earlier patent.

There was no dedication.

I am in entire agreement with the examiner "that it is novel to associate the particular spring in a starter mechanism; the particular spring was specially designed with the requirements of its use in mind, and the association of the particular spring with the other elements is apparently productive of improved results in this art."

The combination claims seem to me to be clearly valid. This leaves for consideration on the question of validity, whether claims 1, 2, and 3 are valid per se claims, covering the spring "for use in transmission mechanism in engine starting apparatus."

It was certainly the intention of the patentee to secure, and the Patent Office to grant, claims 1, 2, and 3 as per se claims, and their validity as such cannot be denied, because flattened springs were widely used before Bendix, for nonanalogous purposes, not intended for use as a drive spring, and not adapted for such use.

Plaintiff certainly was not bound to show that prior to Bendix a flattened spring had never been used for any purpose.

The form of claim is the same as that shown in Potts v. Creager, supra; C. & R. Research Corp. v. Write, Inc. (D. C.) 19 F. (2d) 380; Cinema Patents Co. v. Craft Film Laboratories (D. C.) 56 F.(2d) 265; Forsyth v. Garlock, supra.

The spring is the dominant element of the patent in suit, and no spring of the prior art was called upon to perform any such diverse functions, and no spring of the prior art could be substituted for the spring of the pat-

ent in suit without making substantial modifications.

The introductory clause of each of claims 1, 2, and 3 does not render those claims combination claims and deprive them of a per se status.

The introductory clause does not constitute an element of the combination, and is not a limitation in that respect. Sly Mfg. Co. v. Russell & Co. (C. C. A.) 189 F. 61, 65; Schram Glass Mfg. Co. v. Homer Brooke Glass Co. (C. C. A.) 249 F. 228.

It therefore seems clear to me that claims 1, 2, and 3 are valid per se claims, covering the spring.

The patent in suit is valid.

We thus come to the question of infringement.

The defendant's springs are designed for use with the Bendix drive. They are not designed for any other purpose, and they are not capable of any other use.

They are meant to and do perform the same functions and subserve the same purposes as the spring of the patent in suit, and by the same means, that is, a spring that is flattened and that has its longer dimension at right angles to the axis of the spring.

In defendant's first spring the convolutions were bulged slightly outward in cross-section; in the second spring the convolutions were bulged slightly inward. This, however, is immaterial so far as the question of infringement is concerned. Winans v. Denmead, 15 How. 330, 14 L. Ed. 717; Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co. (C. C. A.) 40 F.(2d) 460, 462.

Defendant's springs are a copy of the spring of the patent in suit, produce the same result by the same means as the spring of the patent in suit, and it is the purpose of defendant that this should be effected.

Even defendant's expert did not testify that there is any difference in conditions of use, purpose, function, or results, or that defendant's springs did not accomplish the same ends by the same means, acting through the same principles.

Claims 1, 2, and 3 are per se claims and they are directly infringed by the defendant. The spring is the main element of the combination claims, and as to those claims there is contributory infringement by the defendant. Leeds & Catlin Co. v. Victor Talking Mach. Co., 213 U. S. 325, 29 S. Ct. 503, 53 L. Ed. 816.

By reason of the sale of springs to complete the combination with rebuilt drives, there is contributory infringement by the defendant.

▮ Defendant cannot escape contributory infringement by its claim that the spring is a repair part.

The whole question I considered at some length in Bassick Mfg. Co. v. Ready Auto Supply Co., Inc. (D. C.) 22 F.(2d) 331, 340, and it is unnecessary to repeat the argument thereof or the authorities cited therein.

Briefly stated, the law is that durable parts and elements may be mended or repaired, but not replaced, and quickly perishable or consumed elements may be replaced.

▮ The spring is separately patented, and defendant has no right to manufacture its springs for use in the Bendix drive, and this is true whether it is fragile or not. Aiken v. Manchester Print Works, Fed. Cas. No. 113; Morrin v. Robert White Engineering Works (C. C.) 138 F. 68; C. & R. Research Corporation v. Write, Inc., supra.

This is also true where, as in this case, the spring is the main inventive element of the combination, even though it had not been separately patented. Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189; Singer Mfg. Co. v. Springfield Foundry Co. (C. C.) 34 F. 393; Davis Electrical Works v. Edison Electric Light Co. (C. C. A.) 60 F. 276.

The spring is the main, dominant, and distinctive element of the drive, and is not a frangible element, or one intended to be consumed or destroyed in use.

In fact, the evidence shows that the life of the genuine spring is substantially the life of the car, but that the defendant's springs are generally inferior and lack durability. It also appears from the testimony that a large percentage of the spring replacements are improper, as many springs are replaced before they have lived the full life of usefulness.

▮ The defendant cannot escape infringement on the claim of implied license: First, because the spring is not a fragile or breakable part, or one that is intended to be consumed in use, as in Morgan Envelope Co. v. Albany Perforated Wrapping Paper Co., 152 U. S. 425, 14 S. Ct. 627, 38 L. Ed. 500; second, because the spring is separately patented; third, because the spring is the main, dominant, and distinctive element of the drive; fourth, because the defendant is not a user but is a competitor.

316

The defendant does not sell springs only to replace broken springs or to meet an emergency; on the contrary, the object of the defendant is to sell as many springs as it can by the wholesale through distributors all over the country. To accomplish this, defendant tries to make it profitable to garage men and others to make replacements, and that is calculated to induce the making of improper replacements.

Whatever right a user might have in an emergency to make a replacement (which need not here be considered) the defendant does not stand in the place of a user, it is a competitor of the plaintiff, and its whole attitude is that of a trespasser. Morrin v. Robert White Engineering Works, supra, affirmed (C. C. A.) 143 F. 519.

The defendant in the instant suit does not even repair a defective part but supplies new parts to any purchaser. No implied license to do this was given by the sale of the drive. National M. Casting Co. v. American Steel Foundries (C. C.) 182 F. 626; Wilson v. Union Tool Co. (C. C. A.) 265 F. 669, affirmed 259 U. S. 107, 42 S. Ct. 427, 66 L. Ed. 848; Connecticut Telephone & Electric Co. v. Brown & Caine (D. C.) 10 F.(2d) 823; Connecticut Telephone & Electric Co. v. Automotive Equipment Co. (D. C.) 14 F.(2d) 957, affirmed (C. C. A.) 19 F.(2d) 990.

All that I have before said applies with equal if not greater force to the sale of parts in connection with rebuilt drives.

The Morgan Envelope Case, supra, and cases like Williams v. Barnes (C. C. A.) 234 F. 339, are not in point and do not sustain defendant's contention, as the spring in the patent in suit is not a fragile or breakable part, or one intended to be consumed in use, as were the elements in question in those cases.

Carbice Corporation of America v. American Patents Development Corporation et al., 283 U. S. 27, 51 S. Ct. 334, 75 L. Ed. 819, cited by defendant, is not in point as the dry ice (solid carbon dioxide), an element in the combination in that suit, was not separately patented but covered by a patent on the combination, and could be made and sold by any one, whereas in the instant suit the spring is separately patented, as well as in combination.

The defense of implied license has not been sustained.

This leaves for consideration only the defense of unclean hands.

This defense is based upon the distribution by the plaintiff of two letters to the trade with respect to defendant's springs.

I saw and heard the witness Heitzmann, the president of the defendant, and the witness Nygard, defendant's licensor, and a consideration of their testimony, which to me was astounding, convinces me that plaintiffs had a perfect right to notify the trade and protect their rights under the patent.

There was no bad faith on the part of the plaintiffs, and there was nothing contained in the letters that was not justified, when you consider the testimony of the witnesses Heitzmann and Nygard.

No unnecessarily strict construction should be adopted to relieve the defendant in this suit. Kampfe v. Reichard (C. C.) 105 F. 622.

Even if the plaintiffs went a little too far, which I do not believe or even assume, still as Judge Learned Hand said, in Primeau v. Granfield (C. C.) 180 F. 847, 852: "Even a wrongdoer is not the prey of any spoliator who may outwit him."

The plaintiffs' patent in suit had before the sending out of that notice been held valid and infringed by Judge Baltzell, in Eclipse Machine Co. v. Eclipse Tool Co. Four consent decrees had been secured against various defendants in other districts, and in the case brought by plaintiffs against Brown & Green, after plaintiffs' case had been practically completed, the real defendant had solicited and procured a license.

The connection of Heitzmann with at least one, and Nygard with at least two, former infringing companies, and the way in which the defendant was conducting business, put the plaintiffs in a position where it was their duty to protect themselves as well as the trade, and defendant suffered no damage by the sending of such letters, other than such as may have been incidental to the protection of plaintiffs' rights, necessitated by conduct of the defendant by its president and its licensor, which requires no characterization by me, but can be best understood by reading their testimony.

Not only was there no bad faith shown on the part of the plaintiff in sending out the letters of which complaint is made, but in my opinion it acted in good faith and promptly, believing to be valid its claims which had been so adjudicated, and in an honest effort to protect them from invasion. Adriance, Platt & Co. v. National Harrow Co. (C. C. A.) 121 F. 827, 829; Parker Pen Co. v. Finstone (D. C.) 7 F.(2d) 753, 756; Virtue v. Creamery

Package Mfg. Co. (C. C. A.) 179 F. 115, 120; Connecticut Telephone & Electric Co. v. Automotive E. Co. (D. C.) 14 F.(2d) 957, affirmed (C. C. A.) 19 F.(2d) 990; James Ferry Co. v. Atlantic Const. Co. (D. C.) 60 F.(2d) 564.

It is unnecessary to consider at length the cases cited by defendant, as I have found the patent valid, and the plaintiffs had a right to protect it, and no case cited by defendant, in my opinion, is authority for sustaining the defense of unclean hands under the facts as they appear in this case.

The defendant has failed to sustain the defense of unclean hands.

The patent is valid and infringed.

Plaintiffs are entitled to a decree against the defendant for injunction, damages, and costs, with the usual order of reference, and a decree therefor in accordance with this opinion will be granted.

Settle decree on notice.

Submit proposed findings of fact and conclusions of law in accordance with this opinion for the assistance of the court, as provided by Equity Rule 11 of this court.